<u>NOT FOR PUBLICATION</u>

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

|  |  |  |
|---|---|---|
| LOGICAL DESIGN SOLUTIONS, INC., | : | |
| | : | **Civil Action No. 20-12077 (SRC)** |
| Plaintiff, | : | |
| | : | |
| v. | : | **OPINION** |
| | : | |
| CVS PHARMACY, INC., | : | |
| | : | |
| Defendant. | : | |
| | : | |

**CHESLER**, District Judge

This matter comes before the Court upon Defendant CVS Pharmacy's motion for judgment on the pleadings, pursuant to Federal Rule of Civil Procedure 12(c).  Plaintiff Logical Design Solutions has opposed the motion.  The Court, having considered the papers filed by the parties, proceeds to rule on the motion without oral argument, pursuant to Federal Rule of Civil Procedure 78.  For the reasons discussed below, the Court will grant Defendant's motion as to Counts 1, 2, and 3 of the Complaint, thereby dismissing those counts. However, Count 4 of the Complaint will be upheld.

### I.   BACKGROUND[1]

This case primarily involves a claim for breach of contract. In or around early 2019, CVS Pharmacy ("CVS" or "Defendant"), a national pharmacy chain, solicited proposals for updating

---

[1] The background sets forth facts alleged in the Complaint and contained in documents attached to or referenced in the Complaint. The facts are taken as true for purposes of this motion for judgment on the pleadings only.

its intranet platform ("the Project"). In March of 2019, Logical Design Solutions ("LDS" or "Plaintiff"), a digital strategy and design consulting services company, submitted a proposal for the Project, which CVS ultimately selected. Thereafter, on July 1, 2019, LDS and CVS entered into a Professional Services Agreement ("PSA"), in which, in exchange for fees to be determined in subsequent Statements of Work, LDS agreed to assess and evaluate CVS's then-existing intranet platform, and to then design and implement a new intranet platform. Subsequently, on August 1, 2019, LDS and CVS entered into three Statements of Work pursuant to the PSA: one for the Strategy Phase of the Project (the "Strategy SOW"), one for the Design Phase of the Project (the "Design SOW"), and one for the Realization Phase of the Project (the "Realization SOW"). Each Statement of Work included a maximum budget for the phase. In particular, the budget listed in the Design SOW was $936,095. The Design SOW also stated that: "In no event shall the billed total costs for this SOW exceed the stated budget of $936,095, without a written Change Order approved in writing by the CVS Strategic Procurement Department and a CVS Vice President or higher authority responsible for the fees detailed in this SOW." Design SOW, Sec. 4.0.

On December 5, 2019, LDS completed the Strategy Phase of the Project and presented to CVS the strategy for the Design Phase. At this point, it became clear to LDS that CVS's design needs exceeded the scope of services set forth in the Design SOW. As such, in January 2020, LDS explained to CVS that a change order form would be needed to properly complete the Design Phase of the Project. However, CVS's Project Manager at the time, Doug Sinclair, instructed LDS to wait to submit any change order forms and to instead submit one combined change order form for all necessary additional services once all those services were identified. As such, LDS continued to perform all services necessary to complete the Design Phase of the

Project. Throughout this time, LDS continued to regularly check in with executives from CVS to discuss the budget for the Design Phase of the Project. While the Design SOW budget was ultimately exhausted before all the services were completed, CVS did not instruct LDS to cease performance at any time before completing the Design Phase of the Project.

Then, in May 2020, LDS ultimately submitted a change order form for the additional services it performed, which would expand the budget for the Design SOW from $936,095 to $1,897,693. Additionally, on July 10, 2020, LDS delivered the finished project of the Design Phase to CVS, which CVS accepted. Nevertheless, later that month, CVS informed LDS that its change order request would not be approved and that no additional fees would be paid to LDS beyond the original budget of $936,095. CVS also informed LDS that it would not be moving forward with the Realization SOW for the Realization Phase of the Project. Subsequently, on August 31, 2020, LDS filed a Complaint in this Court alleging four counts against CVS: (1) breach of contract, (2) fraudulent inducement, (3) unjust enrichment, and (4) breach of the duty of good faith and fair dealing. CVS then brought this motion for judgment on the pleadings, pursuant to Federal Rule of Civil Procedure 12(c).

## II.   DISCUSSION

### A.  Legal Standard

Through its motion for judgment on the pleadings, CVS seeks dismissal of the Complaint in its entirety. Under Federal Rule of Civil Procedure 12(c), "[a]fter the pleadings are closed—but early enough not to delay trial—a party may move for judgment on the pleadings." Fed. R. Civ. P. 12(c). In deciding whether to grant a motion for judgment on the pleadings, courts apply the same standard of review as a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6). Wolfington v. Reconstructive Orthopaedic Assocs. II PC, 935 F.3d 187, 195 (3d Cir.

2019). Therefore, in reviewing such a motion, "the court must 'view the facts presented in the pleadings and the inferences to be drawn therefrom in the light most favorable to the nonmoving party,' and may not grant the motion 'unless the movant clearly establishes that no material issue of fact remains to be resolved and that he is entitled to judgment as a matter of law.'" In re Asbestos Prods. Liab. Litig. (No. VI), 822 F.3d 125, 133 n.6 (3d Cir. 2016).

Further, while both parties agree that, under the PSA's choice of law provision, New York substantive law applies to this motion, the Federal Rules of Civil Procedure still apply to this motion. See Erie R. Co. v. Tompkins, 304 U.S. 64, 91-92 (1938) (explaining the general precept that, while federal courts operating under diversity jurisdiction apply state substantive law, federal courts always apply their own rules of procedure). As such, any citations by Plaintiff in its opposing papers to the New York Civil Practice Law and Rules are inapposite, and the federal pleading standard, explained in greater detail below, governs this motion.

Under Federal Rule of Civil Procedure 8(a)(2), a complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). To meet this pleading standard and avoid dismissal under Rule 12(b)(6) (and relatedly, under Rule 12(c)), the Supreme Court has explained that "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007)). A complaint will meet this plausibility standard "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. While the complaint need not demonstrate that a defendant is probably liable for the wrongdoing to meet the requisite pleading standard, allegations that give rise to the mere possibility of unlawful conduct are insufficient to withstand a motion to

dismiss. Id.; Twombly, 550 U.S. at 557. Further, while a complaint is not required to include highly "detailed factual allegations," it must include more than mere "labels and conclusions." Twombly, 550 U.S. at 555.  Indeed, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions."  Iqbal, 556 U.S. at 678.

Moreover, while a somewhat general claim for relief may survive the Twombly and Iqbal pleading standard, when a complaint alleges fraud, Federal Rule of Civil Procedure 9(b) imposes an even stricter pleading standard – that is, that the party alleging fraud "must state with particularity the circumstances constituting fraud . . . ."  Fed. R. Civ. P. 9(b).  The Third Circuit has explained that, to meet this particularity standard, the complaint must be detailed enough that it "place[s] the defendant on notice of the 'precise misconduct with which [he is] charged.'" Frederico v. Home Depot, 507 F.3d 188, 200 (3d Cir. 2007) (quoting Lum v. Bank of Am., 361 F.3d 217, 224 (3d Cir. 2004), abrogated on other grounds by Twombly, 550 U.S. 544 (2007)).

Finally, "in deciding a motion for judgment on the pleadings, a court may only consider 'the complaint, exhibits attached to the complaint, matters of public record, as well as undisputedly authentic documents if the complainant's claims are based upon these documents.'" Wolfington, 935 F.3d at 195 (quoting Mayer v. Belichick, 605 F.3d 223, 230 (3d Cir. 2010)).

Being that Plaintiff's Complaint alleges four distinct causes of action, the Court will examine each of those claims separately to determine which counts, if any, meet the pleading standards necessary to survive this motion.

### B.  Count 1: Breach of Contract

Beginning with the first count in the Complaint, this count alleges that CVS breached its Design SOW with LDS by failing to pay LDS for its additional work after the original Design SOW budget was exhausted. To make out a viable claim for breach of contract under New York

law, a "'complaint need only allege (1) the existence of an agreement, (2) adequate performance of the contract by the plaintiff, (3) breach of contract by the defendant, and (4) damages.'" Eternity Glob. Master Fund Ltd. v. Morgan Guar. Tr. Co. of N.Y., 375 F.3d 168, 177 (2d Cir. 2004) (quoting Harsco Corp. v. Segui, 91 F.3d 337, 348 (2d Cir. 1996)). However, in bringing such a claim, the plaintiff "must allege the specific provisions of the contract upon which the breach of contract claim is based. A claim for breach of contract cannot be sustained simply by a conclusory statement that the accused breached a contract." Stadt v. Fox News Network LLC, 719 F. Supp. 2d 312, 318 (S.D.N.Y. 2010). See also Fink v. Time Warner Cable, 810 F. Supp. 2d 633, 644-45 (S.D.N.Y. 2011) (quoting Martinez v. Vakko Holding A.S., No. 07 Civ. 3413(LAP), 2008 WL 2876529, at *2 (S.D.N.Y. July 23, 2008)) ("[A] breach of contract claim will be dismissed where a plaintiff fails to allege 'the essential terms of the parties' purported contract, including the specific provisions of the contract upon which liability is predicated.'"); Sud v. Sud, 211 A.D.2d 423, 424 (N.Y. App. Div. 1st Dep't 1995) (The . . . Court properly dismissed . . . the plaintiff's amended complaint, purporting to set forth a cause of action for breach of . . . contract[,] . . . [partially due to] plaintiff's failure to allege, in nonconclusory language, as required, the essential terms of the parties' purported contract, including the specific provisions of the contract upon which liability is predicated . . . ."); Gianelli v. RE/MAX of N.Y., Inc., 144 A.D.3d 861, 862 (N.Y. App. Div. 2nd Dep't 2016) ("A breach of contract cause of action fails as a matter of law in the absence of any showing that a specific provision of the contract was breached."); Woodhill Elec. v. Jeffrey Beamish, Inc., 73 A.D.3d 1421, 1422 (N.Y. App. Div. 3d Dep't 2010) ("In order to adequately plead a cause of action for breach of contract, however, the complaint must allege the provisions of the contract that were allegedly breached."); Valley Cadillac Corp. v. Dick, 238 A.D.2d 894, 894 (N.Y. App. Div. 4th Dep't 1997) (quoting

Copeland v. Weyerhaeuser Co., 124 A.D.2d 998, 998 (N.Y. App. Div. 4th Dep't 1986)) ("'A complaint for breach of contract must allege the provisions of the contract upon which the claim is based . . . .'").

Here, LDS failed to adequately plead its claim for breach of contract. First, in Count 1 of the Complaint in particular, LDS does not point to any specific provisions or essential terms of the Design SOW that were breached by CVS. Rather, LDS merely states in a conclusory fashion that "CVS breached the Design SOW by failing to pay the fees owed to LDS under the same." Compl., ¶ 102. This alone is insufficient to support Plaintiff's claim for breach of contract, as it does not rise to the level of plausibility required by Twombly and Iqbal.

Second, even reviewing the Complaint as a whole, this also does not support a claim for breach of an express contract provision. For example, the Design SOW clearly states that no additional fees would be paid by CVS "without a written Change Order approved in writing by the CVS Strategic Procurement Department and a CVS Vice President or higher authority responsible for the fees detailed in this SOW." Design SOW, Sec. 4.0. Further, nowhere in the Complaint does Plaintiff even allege that this key term in the Design SOW was somehow amended or waived. While Plaintiff did argue in its opposing papers that the change order process was waived, this allegation is completely absent from LDS's actual pleading – the Complaint. Regardless, even if the Complaint did allege waiver of the formal change order process, the facts presented in the Complaint likely would not be able to support such an allegation. In particular, while the Complaint references an email exchange between LDS staff, April Jaconski, and Judy Victorson from CVS as support for its allegation that CVS agreed to pay LDS for its additional services (even without approving a formal change order form), a closer look at this email exchange demonstrates that no such agreement was made. If anything,

this email exchange between LDS and CVS shows that CVS was concerned about exceeding its budget. Additionally, even assuming *arguendo* that this email exchange could be construed as Ms. Jaconski or Ms. Victorson's approval of increasing the budget, the Design SOW made it very clear that a change request requires approval by the CVS Strategic Procurement Department, of which neither Ms. Jaconski nor Ms. Victorson are a part of. As such, because Count 1 of the Complaint does not adequately allege breach of contract, Count 1 of the Complaint will be dismissed without prejudice.

### C.  Count 2: Fraudulent Inducement

As for the second count of the Complaint, this count alleges fraudulent inducement by CVS.  Being that this claim alleges fraud, the heightened pleading standard set forth in Federal Rule of Civil Procedure 9(b) applies – meaning that, to withstand this motion, this claim must "state with particularity the circumstances constituting fraud . . . ."  Fed. R. Civ. P. 9(b). As such, under Rule 9(b), "plaintiffs must allege facts that give rise to a strong inference of fraudulent intent." Lerner v. Fleet Bank, N.A., 459 F.3d 273, 290 (2d Cir. 2006) (quoting Acito v. IMCERA Group, Inc., 47 F.3d 47, 52 (2d Cir. 1995)).  "The requisite 'strong inference' of fraud may be established either (a) by alleging facts to show that defendants had both motive and opportunity to commit fraud, or (b) by alleging facts that constitute strong circumstantial evidence of conscious misbehavior or recklessness." Shields v. Citytrust Bancorp, Inc., 25 F.3d 1124, 1128 (2d Cir. 1994).

Moreover, "[t]o state a claim for fraudulent inducement under New York law, a plaintiff must allege: 'a representation of fact, which is untrue and either known by defendant to be untrue or recklessly made, which is offered to deceive and to induce the other party to act upon it, and which causes injury.'" PetEdge, Inc. v. Garg, 234 F. Supp. 3d 477, 490 (S.D.N.Y. 2017) (quoting

Suez Equity Inv'rs, L.P. v. Toronto–Dominion Bank, 250 F.3d 87, 104 (2d Cir. 2001)). See also Wall v. CSX Transp., Inc., 471 F.3d 410, 415-16 (2d Cir. 2006) (quoting Bridgestone/Firestone, Inc. v. Recovery Credit Servs., Inc., 98 F.3d 13, 19 (2d Cir. 1996)) ("Proof of fraud under New York law requires a showing that '(1) the defendant made a material false representation, (2) the defendant intended to defraud the plaintiff thereby, (3) the plaintiff reasonably relied upon the representation, and (4) the plaintiff suffered damage as a result of such reliance.'"). More specifically though, if a plaintiff claims that the defendant intended to fraudulently induce the plaintiff, the plaintiff must allege facts establishing that the defendant, "*at the time of making the promissory representation*, never intended to honor the promise." Perella Weinberg Partners LLC v. Kramer, 153 A.D.3d 443, 449 (N.Y. App. Div. 1st Dep't 2017) (emphasis added). See also Pope v. N.Y. Prop. Ins. Underwriting Ass'n., 112 A.D.2d 984, 985 (N.Y. App. Div. 2nd Dep't 1985) ("[I]t is well settled that an allegation of fraud based upon a statement of future intention must allege facts sufficient to show that the party, at the time the promissory representation was made, never intended to honor or act on those statements."). Therefore, "[g]eneral allegations of lack of intent to perform are insufficient . . . ." Perella, 153 A.D.3d at 449. "[O]ne cannot state a claim for fraud based . . . simply by making a conclusory assertion that the promisor did not intend to perform at the time the promise was made." Liberty Mutual Ins. Co. v. York Hunter, Inc., 945 F. Supp. 742, 749 (S.D.N.Y. 1996).

Plaintiff here has failed to allege any facts that demonstrate that, at the time the contract was signed, CVS intended to breach its contract with LDS. Rather, here too, the Complaint only presents conclusory assertions that CVS intended to fraudulently induce LDS to perform, such as: "CVS systematically induced LDS to continue to perform all services necessary to complete the Design Phase of the Project . . . with the intent that it would never pay LDS for work set forth

in the Change Order and the Second Change Order by projecting its approval of, and willingness to accept, such services." Compl., ¶ 108. The Complaint does not point to any facts to support this conclusion, and as such, Count 2 does not meet the Twombly/Iqbal plausibility standard, nor the stricter pleading standard set by Rule 9(b). As such, Count 2 of the Complaint will be dismissed without prejudice.

### D.  Count 3: Unjust Enrichment

Next, the third count in the Complaint alleges unjust enrichment. Under New York law, "[t]he elements of an unjust enrichment claim are '(1) the other party was enriched, (2) at the other party's expense, and (3) that it is against equity and good conscience to permit the other party to retain what is sought to be recovered." Cohen v. BMW Invs. L.P., 144 F. Supp. 3d 492, 500 (S.D.N.Y. 2015) (quoting Georgia Malone & Co. v. Rieder, 19 N.Y.3d 511, 516 (N.Y. 2012)). However, "unjust enrichment is not a catchall cause of action to be used when others fail. . . . An unjust enrichment claim is not available where it simply duplicates, or replaces, a conventional contract or tort claim." Corsello v. Verizon N.Y., Inc., 18 N.Y.3d 777, 790 (N.Y. 2012) (internal citations omitted). Therefore, "the existence of a valid and enforceable written contract governing a particular subject matter ordinarily precludes recovery in quasi contract for events arising out of the same subject matter." Clark-Fitzpatrick, Inc. v. Long Island R.R. Co., 70 N.Y.2d 382, 388 (N.Y. 1987). See also Goldman v. Metro. Life Ins. Co., 5 N.Y.3d 561, 587-88 (N.Y. 2005) (finding that because "the disputed terms and conditions [fell] entirely within the . . . contract, there [was] no valid claim for unjust enrichment").

Nevertheless, "[w]hile a party generally may not simultaneously recover upon a breach of contract and unjust enrichment claim arising from the same facts, it is still permissible to plead such claims as alternative theories[,]" particularly where the plaintiff challenges the validity of

10

the contract. <u>Bd. of Managers of Trump Tower at City Ctr. Condo. by Neiditch v. Palazzolo</u>, 346

F. Supp. 3d 432, 465 (S.D.N.Y. 2018); <u>Singer v. Xipto Inc.</u>, 852 F. Supp. 2d 416, 426 (S.D.N.Y.

2012). <u>See also</u> <u>Joseph Sternberg, Inc. v. Walber 36th St. Assocs.</u>, 594 N.Y.S.2d 144, 144 (N.Y.

App. Div. 1st Dep't 1993) ("Thus, it appears that where there is a bona fide dispute as to the

existence of a contract or where the contract does not cover the dispute in issue, plaintiff may

proceed upon a theory of quantum meruit and will not be required to elect his or her remedies.").

      Here, Plaintiff's unjust enrichment claim must be dismissed with prejudice, as a valid and

enforceable contract, the Design SOW, describes the budget for the Design Phase of the Project

and details the change order process. As such, under the ruling in <u>Clark-Fitzpatrick</u> by the New

York Court of Appeals, because the parties' contract governs the same subject matter of the

unjust enrichment claim, this claim is precluded. <u>See also</u> <u>ECD N.Y. Inc. v. 616 First Ave.</u>

<u>Developer LLC</u>, No. 2020-00092, 2020 WL 6164220, at *1 (N.Y. App. Div. 1st Dep't Oct. 22,

2020):

> The unjust enrichment claim is dismissed because . . . there is a detailed, 100–page
> written contract between plaintiff and [defendant] and neither side disputes its validity.
> Plaintiff's unjust enrichment claim arises out of the same subject matter that is covered by
> the contract, which covers change orders, schedule changes, delays, out-of-sequence
> work, changes in site conditions, and overtime.

Further, because Plaintiff has not questioned the validity of the contract itself, it cannot allege

unjust enrichment as an alternative theory for relief. Therefore, this claim is precluded and must

be dismissed with prejudice.

### E.  Count 4: Breach of the Duty of Good Faith and Fair Dealing

      Plaintiff's fourth and final count alleges that CVS breached the duties of good faith and

fair dealing. "In New York, all contracts imply a covenant of good faith and fair dealing in the

course of performance." <u>511 West 232nd Owners Corp. v. Jennifer Realty Co.</u>, 98 N.Y.2d 496,

500 (N.Y. 2002). "This covenant embraces a pledge that 'neither party shall do anything which will have the effect of destroying or injuring the right of the other party to receive the fruits of the contract.'" Id. (quoting Dalton v. Educ. Testing Serv., 87 N.Y.2d 384, 389 (N.Y. 1995)). However, it is a general rule that this covenant cannot imply any obligations "which would be inconsistent with other terms of the contractual relationship[,]" as it "is not designed to enlarge or create new substantive rights between parties." Ferguson v. Lion Holding, Inc., 478 F. Supp. 2d 455, 479 (S.D.N.Y. 2007); Murphy v. Am. Home Prods. Corp., 58 N.Y.2d 293, 304 (N.Y. 1983).

Nevertheless, New York courts have found that a party may still be in breach of the implied covenant of good faith and fair dealing, even without expressly breaching a contractual obligation, when the party "exercised a [contractual] right malevolently, for its own gain as part of a purposeful scheme designed to deprive [the other party] of the benefits of the [contract]." Richbell Info. Servs., Inc. v. Jupiter Partners, 309 A.D.2d 288, 302 (N.Y App. Div. 1st Dep't 2003). For example, in Richbell, the First Department of the New York Supreme Court, Appellate Division explained that "even an explicitly discretionary contract right may not be exercised in bad faith so as to frustrate the other party's right to the benefit under the agreement." Id. Further, the court there went on to explain that this rule, which puts a "good faith limitation on the exercise of a contractual right[,]" does not conflict with the general principle that the implied covenant of good faith should not "create new duties that negate explicit rights under a contract." Id. Rather, when a plaintiff alleges that the other party exercised its contractual right in bad faith, to purposefully deprive the plaintiff of the fruits of its bargain, that type of allegation "do[es] not create new duties that negate [the defendant's] explicit rights under a contract, but

rather, seek[s] imposition of an entirely proper duty to eschew this type of bad-faith targeted malevolence in the guise of business dealings." Id.

Here, Plaintiff has alleged sufficient facts to support its claim that CVS breached the implied covenant of good faith and fair dealing. Even though the Design SOW gave CVS discretion to determine whether to approve any change order requests, LDS has put forth enough information to create a plausible inference that CVS acted in bad faith in choosing not to approve LDS's change order requests. In particular, LDS's allegation that CVS accepted LDS's work product without complaint adequately demonstrates a basis for finding bad faith. Therefore, while the question of whether CVS truly acted in bad faith cannot be decided with certainty at this early stage, LDS has put forth sufficient information to withstand dismissal of its claim that CVS breached the covenant of good faith and fair dealing.

Additionally, "breach of [the covenant of good faith and fair dealing] is merely a breach of the underlying contract." Fasolino Foods Co. v. Banca Nazionale del Lavoro, 961 F.2d 1052, 1056 (2d Cir. 1992). Thus, the Court will consider this claim a cause of action for breach of contract, which is specifically predicated on CVS's alleged breach of the implied covenant of good faith and fair dealing. While, as previously explained, a breach of contract claim under New York law necessitates that the plaintiff point to an express contract provision that was breached, CVS has met this requirement. In particular, in Count 4 of the Complaint, LDS alleges: "CVS recognized that LDS could not unilaterally amend the Design SOW and would risk breaching the Design SOW by ceasing performance. With this information in mind, CVS refused to approve the Change Order or the Second Change Order to allow LDS to complete the Project without harm to LDS." Compl., ¶¶ 134-135. The Court finds that this reference to the

change order process sufficiently expresses which aspect of the contract CVS allegedly breached. Therefore, Count 4 is upheld as properly asserting a cause of action.[2]

**III.   CONCLUSION**

For the foregoing reasons, the Court finds that Counts 1, 2, and 3 of the Complaint do not meet the requisite pleading standards. Therefore, Counts 1 and 2 will be dismissed without prejudice and Plaintiffs shall be granted leave to replead these claims by filing an Amended Complaint.  However, Count 3, for unjust enrichment, will be dismissed with prejudice, because, as explained, New York law does not allow a cause of action for unjust enrichment when a valid contract governs the subject matter of the claim. Finally, the factual allegations of the Complaint, as well as Count 4 of the Complaint, are upheld. An appropriate Order with be filed together with this Opinion.

  s/Stanley R. Chesler
STANLEY R. CHESLER
United States District Judge

Dated: March 11, 2021

---

[2]  However, a portion of Count 4 must be stricken – particularly, the end of Paragraph 131 of the Complaint, which alleges that "CVS never intended to pay" for certain services, Compl., ¶ 131, as that allegation is not supported by any factual allegations in the Complaint.